**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TIMOTHY MCKIMMY<br>*Plaintiff*, | §<br>§<br>§ | |
| V. | § | CIVIL ACTION NO. 4:22-cv-00545 |
| | §<br>§ | |
| OPENSEA<br>*Defendant.* | §<br>§ | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff Timoty McKimmy, who files this Original Complaint against Defendant OpenSea, and for cause of action, respectfully shows this Court the following:

**JURISDICTION AND VENUE**

1.    The Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. 1332, because the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

2.    Venue is proper in this district because Defendant does substantial business in this district, through its online platform. This is also the district Plaintiff was in at the time he purchased the NFT at issue.

**PARTIES**

3.    Plaintiff Timothy McKimmy is an individual living in Texas.

4.    Defendant OpenSea is a foreign corporation headquartered in New York. Defendant may be served via certified mail, return receipt requested, to its headquarters at 105 E. 24th St #4D, New York, NY 10010.

## FACTUAL BACKGROUND

5. Defendant OpenSea is the principal non-fungible token ("NFT") marketplace. It is widely referred to as the "eBay of NFTs."

6. In only four years of existence, Defendant has handled over $11 billion in sales to date, including the sale of a Bored Ape Yacht Club NFT for $3 million. *The Information* reported OpenSea was recently fielding new investment offers that valued the company at $10 billion. Other outlets reported the valuation at close to $13 billion.

7. To use OpenSea, users must connect crypto wallets to OpenSea. Defendant was aware of security vulnerabilities in its platform. Despite having full knowledge of these security issues, Defendant did not properly inform its users and did not timely put adequate safety measures in place.

8. Instead of shutting down its platform to address and rectify these security issues, Defendant continued to operate. Defendant risked the security of its users' NFTs and digital vaults to continue collecting 2.5% of every transaction uninterrupted.

9. The Bored Ape Yacht Club consists of 10,000 unique NFTs. The current price of entry, for the lowest valued Bored Ape, is 98 ETH, or $307,564 USD. Ownership of a Bored Ape NFT gives an individual access to the Yacht Club, which contains numerous members-only benefits. One of those benefits is the ability to converse with other Yacht Club members. Owners of Bored Ape NFTs include: current NBA stars Stephen Curry and LaMelo Ball; NBA Hall of Famer Shaquille O'Neal; soccer star Neymar; Dallas Mavericks' owner Mark Cuban; tennis great Serena Williams; comedian Kevin Hart; music artists such as Justin Bieber, Future, Lil Baby, Post Malone, Steve Aoki, and Eminem; and numerous other individual investors.

10. Plaintiff is the rightful owner of Bored Ape #3475. On or about February 7, 2022, Plaintiff's Bored Ape was stolen, listed, and sold to another individual on Defendant's platform. Plaintiff did not list his Bored Ape for sale on the marketplace. Defendant's security vulnerability allowed an outside party to illegally enter through OpenSea's code and access Plaintiff's NFT wallet, in order to list and sell Plaintiff's Bored Ape at a literal fraction of the value (at .01 ETH). Essentially, OpenSea's vulnerabilities allowed others to enter through its code and force the listing of an NFT. This is through no fault of the owner.

11. After this forced entry through OpenSea code, and immediate purchase/sale, it was then immediately resold at 99 ETH, which is still vastly below value, based on the rarity of the Bored Ape.

12. The "purchase" or "sale" of Plaintiff's Bored Ape was reported by numerous social media accounts, due to its egregiousness. Twitter user @boredapebot reported "Bored Ape #3475 was purchased for 0.01 WETH."

13. Prior to the filing of this lawsuit, Plaintiff attempted to resolve the issue numerous times with Defendant. Defendant ignored Plaintiff. Defendant claimed to be "actively investigating" the issue, yet as of the filing of this Complaint, Defendant has failed to reverse the transaction, return the Bored Ape, and/or provide any adequate remedy.

14. Plaintiff also attempted to resolve the issue with the individual who currently possesses Plaintiff's Bored Ape. The individual refused to return it.

15. Plaintiff's Bored Ape has significant value; this is unquestionable. For example, Justin Bieber purchased Bored Ape #3001 for 500 ETH, or $1.3 million at the time of the transaction. Bieber's Bored Ape has a rarity score of only 53.66 and a rarity rank of #9777. In contrast, Plaintiff's Bored Ape has a rarity score of 138.52 and a rarity rank of #1392. It is in the

top 14% rarity, and it is significantly rarer than Bieber's. Thus, Plaintiff's Bored Ape's value is arguably in the millions of dollars and growing as each day passes.

16. Plaintiff brings this lawsuit to protect the interests of NFT owners, who reside in countries worldwide and use Defendant's platform. Plaintiff brings this lawsuit to force Defendant to enact sufficient security measures and address the known susceptibilities in its interface.

17. NFT forums have discussed instances in which Defendant has approached other victims with an NDA and offering the base floor price, regardless of the rarity of the specific NFT that was stolen. In this instance, Defendant has not approached Plaintiff with any solution.

18. Defendant's platform is no stranger to controversy. On its Twitter account on January 27, 2022, Defendant revealed over 80% of items created with its minting tool were "plagiarized works, fake collections, and spam." This is in addition to numerous reports of security breaches. In September 2021, Defendant admitted insider trading of NFTs it promoted. Defendant's own executive, who was Head of Product, used inside knowledge to buy NFTs before they were promoted on the website.

19. Defendant's actions were a proximate cause of Plaintiff's injuries. Had it not been for Defendant's actions and inactions, Plaintiff would not have suffered damages.

## CAUSES OF ACTION

## NEGLIGENCE

20. Plaintiff re-alleges each aforementioned allegation as if it is fully incorporated below.

21. Defendant owed a duty of reasonable care of Plaintiff. Defendant breached this duty in several ways, including, but not limited to, the following:

    a) Failing to exercise reasonable care;

b) Failing to take proper measures to protect users;

c) Failing to use reasonable security systems and networks;

d) Failing to institute safety protocols;

e) Failing to address vulnerabilities it knew or should have known of;

f) Failing to properly secure;

g) Failing to properly safeguard;

h) Failing to implement processes by which they could timely detect, address and/or remediate security breaches.

## BREACH OF FIDUCIARY DUTY, TRUST, CONTRACT AND IMPLIED CONTRACT

22. Plaintiff re-alleges each aforementioned allegation as if it is fully incorporated below.

23. Defendant breached its fiduciary duty owed to Plaintiff by failing to implement policies and procedures to prevent, identify, detect, respond to, mitigate, contain, and/or correct security violations.

24. Defendant failed to protect the integrity of its systems and failed to timely notify and/or warn Plaintiff and others of the extent and severity of vulnerabilities in its code.

25. Defendant failed to protect against reasonably-anticipated threats or hazards to the security or integrity of its code and systems.

26. By entering into contracts and/or implied contracts with Defendant, users expected Defendant's security practices to comply with laws and regulations. Users like Plaintiff also expected Defendant to reasonably protect wallets which were connected to its platform.

## PRESERVATION NOTICE

27.     Plaintiff hereby requests and demands that Defendant and its agents, attorneys, and insurers preserve and maintain all evidence pertaining to any claim or defense to the incident made the basis of this lawsuit, or the damages resulting therefrom, including but not limited to: any internal communications discussing security issues; memoranda; files; e-mails; text messages; investigation reports; reports of prior hacks; and any other data or information related to the referenced incident.  Failure to maintain such items will constitute a "spoliation" of the evidence.

## JURY DEMAND

28.     Plaintiff demands a jury trial and hereby tenders the jury fee.

## DAMAGES

29.     Plaintiff seeks damages for the loss of the Bored Ape.  Plaintiff seeks any and all damages to which he may be entitled, including the return of the Bored Ape, damages equivalent to the valuation of the Bored Ape, and/or monetary damages over $1,000,000.  Plaintiff seeks attorneys' fees, costs, expenses, pre and post judgment interest, and injunctive relief requiring Defendant to pause and/or stop any listing or sale of the Bored Ape in question.

## PRAYER

30.     For these reasons, Plaintiff asks that Defendant be cited to appear and answer this suit.  Plaintiff prays for any and all other relief to which he may be justly entitled.

Respectfully,

**DALY & BLACK, P.C.**

*/s/ Andrew Dao*
Andrew Dao
Federal I.D. No. 2368172
Texas Bar No. 24082895
2211 Norfolk St., Ste. 800
Houston, Texas 77098

(713) 655-1405
(713) 655-1587 (fax)
adao@dalyblack.com
ecfs@dalyblack.com (service)

*and*

**TADGHIGHI LAW GROUP**

Ash Tadghighi
State Bar No. 24090418
711 Reinicke St.
Houston, Texas 77007
Tel: (832) 930-1135
Fax: (713) 583-0095
ash@tadghighilaw.com

**ATTORNEYS FOR PLAINTIFF**