United States District Court
Southern District of Texas
**ENTERED**
March 23, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIMOTHY MCKIMMY, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:22-CV-00545 |
| OPENSEA, | § § § | |
| Defendant. | § § | |

# ORDER

Before the Court are Defendant OpenSea's Motion to Compel Arbitration (Doc. #17), Plaintiff's Response (Doc. #20), Defendant's Reply (Doc. #21). Having considered the parties' arguments, submissions, and the applicable legal authorities, the Court grants the Motion to Compel Arbitration.

**I.   Background**

    **a.   Factual Background**

Defendant OpenSea (properly named Ozone Networks, Inc. d/b/a OpenSea) ("Defendant" or "OpenSea") owns and operates a digital marketplace for crypto collectibles and non-fungible tokens ("NFTs"). Doc. #17 at 3 & n.1; Doc. #20 at 1. On December 1, 2021, Plaintiff Timothy McKimmy used the OpenSea mobile app for the first time to connect a crypto wallet to one of his OpenSea accounts, using the username "tjmckimmy." Doc. #17 at 9. On December 3, Plaintiff used OpenSea's website to purchase the Bored Ape Yacht Club No. 3475 NFT ("Bored Ape NFT") using a crypto wallet associated with the "tjmckimmy" account. *Id.* at 6. On December 18, Plaintiff purchased an NFT for the first time using a new username, "dextermoonshine." *Id.*, Ex.

1 ¶ 7. On December 19, Plaintiff logged into his "dextermoonshine" account on OpenSea's mobile app for the first time. *Id.*, Ex. 1 ¶ 12.

Use of OpenSea's marketplace is governed by its "Terms of Service" ("Terms"). In the "Introduction" section of the Terms that went into effect in June 2021 (the "June Terms"), and that remained in effect during Plaintiff's uses of OpenSea's services, [1] users were notified that all disputes with OpenSea were to be submitted to "binding and final arbitration":

> THESE TERMS OF USE ARE IMPORTANT AND AFFECT YOUR LEGAL RIGHTS, SO PLEASE READ THEM CAREFULLY. WE WANT TO LET YOU KNOW THAT THE TERMS INCLUDE AN ARBITRATION AGREEMENT WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE DISPUTES BETWEEN US TO BE SUBMITTED TO BINDING AND FINAL ARBITRATION. UNLESS YOU OPT OUT OF THE ARBITRATION AGREEMENT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AND SEEK RELIEF AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING; AND (2) YOU ARE AGREEING TO MANDATORY INDIVIDUAL ARBITRATION FOR THE RESOLUTION OF DISPUTES AND WAIVING YOUR RIGHT TO A JURY TRIAL ON YOUR CLAIMS. PLEASE READ SECTION 15 CAREFULLY.
>
> BY CLICKING ON THE "I ACCEPT" BUTTON, COMPLETING THE ACCOUNT REGISTRATION PROCESS, USING OUR SERVICES AND/OR PURCHASING CRYPTO ASSETS, YOU AGREE TO BE BOUND BY THESE TERMS AND ALL OF THE TERMS INCORPORATED HEREIN BY REFERENCE. If you do not agree to these Terms, you may not access or use the Service or purchase the Crypto Assets.

*Id.*, Ex. 5 at 3. Section 15 of the June Terms notified users that "any dispute or claim" arising from users' use of OpenSea would be subject to arbitration, with limited exceptions to bring qualifying

---

[1] The Court notes that OpenSea updated its Terms on December 31, 2021, which are the operative Terms that are in effect today (the "December Terms"). Doc. #17, Ex. 1 ¶ 3. Because the June Terms are no longer in effect, the Court refers to its contents in the past tense. Although Defendant relies on the June and December Terms in its Motion to Compel, the Court will only refer to the June Terms in its analysis. In its Motion to Compel, Defendant argues that Plaintiff agreed to its Terms "via a pop-up authentication request" when he connected his crypto wallet ("Wallet Authentication Flow"). Doc. #17 at 11–12. Defendant's Wallet Authentication Flow arguments rely on the December Terms. However, Defendant notified the Court that it no longer relies on the Wallet Authentication Flow arguments. Doc. #27. As a result, the Court need not consider the December Terms.

claims in small claims court or to seek equitable relief for infringement or misuse of intellectual property rights in a court. *Id.*, Ex. 5 at 14. Section 15 also noted that the Federal Arbitration Act ("FAA") governed the interpretation and enforcement of the arbitration agreement, and the Judicial Arbitration and Mediation Services, Inc. ("JAMS") would conduct the arbitrations, subject to the most current versions of the Streamlined Arbitration Rules and Procedures and the Comprehensive Arbitration Rules and Procedures (collectively, the "JAMS Rules"). *Id.*, Ex. 5 at 14–15. Under the arbitration agreement provision, arbitrators were given "exclusive authority to (a) determine the scope and enforceability of this Arbitration Agreement and (b) resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable." *Id.*, Ex. 5 at 15. Finally, the arbitration agreement allowed users to opt out of arbitration by sending a written notice to OpenSea's New York headquarters "within 30 days after first becoming subject to this Arbitration Agreement." *Id.*, Ex. 5 at 15–16.

When a user purchases a NFT for the first time using OpenSea's website, he or she must check a box affirming that they "agree to OpenSea's Terms of Service" to complete the transaction. The words "Terms of Service" on the purchase screen are in bold blue font because they are hyperlinked to OpenSea's operative Terms so users can review them before completing their purchase. *Id.* at 6 (showing a screenshot of a purchase screen with the check box and "[b]y checking this box, I agree to OpenSea's Terms of Service"). Similarly, on the landing page for OpenSea's mobile app, first-time users are prompted to press "Continue" to proceed with registration. Above the "Continue" button, it states, "By continuing, you agree to OpenSea's Privacy Policy and Terms of Service." The words "Terms of Service" are in bold white font and hyperlinked to the operative Terms. *Id.* at 8 (showing a screenshot of the mobile app's landing

3

page). First-time users of the mobile app must press "Continue" to use the app's services.

### b. Procedural History

Plaintiff alleges that on or about February 7, 2022, a third party accessed one of his crypto wallets on OpenSea and sold his Bored Ape NFT without his permission. *Id.* at 9; Doc. #20 at 2. According to Plaintiff, the Bored Ape NFT is very rare and "has undisputable value." He states that it has been resold by the hacker for approximately $600,000. Doc. #20 at 2. On February 18, 2022, Plaintiff sued OpenSea, alleging negligence and breach of fiduciary duty, trust, contract, and implied contract. Doc. #1. Plaintiff seeks "damages equivalent to the valuation of the Bored Ape [NFT], and/or monetary damages over $1,000,000." *Id.* at 6. Plaintiff also seeks "injunctive relief requiring Defendant to pause and/or stop any listing or sale of the Bored Ape [NFT] in question." *Id.* Pursuant to its Terms and the arbitration agreement contained therein, Defendant moves to compel arbitration and dismiss Plaintiff's Complaint. Doc. #17.

## II. Legal Standard

When reviewing a motion to enforce an arbitration agreement, the courts ask two questions: (1) "whether there is a valid agreement to arbitrate" and (2) "whether the current dispute falls within the scope of a valid agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) (citation omitted). If the party seeking arbitration identifies a clause delegating threshold issues to the arbitrator, the court will first determine the validity of the arbitration agreement then determine "whether the purported delegation clause is in fact a delegation clause." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.*

### III. Analysis

#### a. Validity of the Arbitration Agreement

The parties dispute whether Plaintiff assented to the arbitration agreement. Doc. #17 at 11; Doc. #20 at 3. Defendant argues that Plaintiff agreed to the arbitration agreement in the June Terms when he purchased NFTs on December 3 and 18, and when he accessed the mobile app for the first time on December 1 and 19 to register each of his accounts. Doc. #17 at 11, 12. Plaintiff avers that he did not assent to the arbitration agreement because he "did not see a clickable link to the Terms of Service and did not review the Terms of Service" when he signed up for or accessed Defendant's services. Doc. #20 at 4.

"When a party seeks to compel arbitration based on a contract, courts must determine 'whether there is a contract between the parties at all.'" *Phillips v. Neutron Holdings, Inc.*, No. 3:18-cv-3382-S, 2019 WL 4861435, at *3 (N.D. Tex. Oct. 2, 2019) (quoting *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018)). To do so, the Court must apply state-law principles of contract. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003). Under Texas law,[2] a binding contract requires (1) an offer; (2) acceptance; (3) mutual assent; (4) each party's consent to the terms; and (5) "execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018). In the digital

---

[2] In their respecting filings before the Court, the parties reference New York and Texas law throughout. *See* Doc. #17; Doc. #20. Because the parties' briefs do not identify any conflicts between New York and Texas' contract laws that would require the Court to conduct a choice-of-law-analysis, the Court will apply Texas law. *Jordan v. Sony BMG Music Ent., Inc.*, 637 F. Supp. 2d 442, 448–49 (S.D. Tex. 2008) (noting that although the parties' contract designated that New York law would govern, "because the parties have chosen to brief their arguments solely with reference to Texas contract law standards and have not identified any distinctions between New York and Texas laws, the Court will apply the law of the forum state, Texas."); *see also Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ("'[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary,' and we simply apply the law of the forum state." (quoting *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002))).

5

context, courts have held that users of mobile apps entered valid arbitration agreements contained in the app's terms of service when "the user had reasonable notice of the existence of the terms—i.e., whether the notice was 'reasonably conspicuous.'" *Phillips*, 2019 WL 4861435, at *4; *see also Walker v. Neutron Holdings, Inc.*, No. 1:19-cv-574-RP, 2020 WL 703268, at *3 (W.D. Tex. Feb. 11, 2020). To determine reasonable notice, the courts "consider the perspective of a reasonably prudent smartphone user." *Phillips*, 2019 WL 4861435, at *4. There is reasonable notice when a user is required to click a "Continue" button and a statement is displayed directly above the button that informs users that by clicking "Continue," they are agreeing to the website's terms. *Walker*, 2020 WL 703268, at *3. Notice is particularly sufficient when the terms of service are hyperlinked and typed in bold colored font. *Id.* (noting that the terms and conditions were in blue font to indicate it was a hyperlink and concluding that these features put the plaintiff on notice that he was agreeing to the terms); *Phillips*, 2019 WL 4861435, at *5 (finding that a user agreement was reasonably conspicuous when the hyperlinked words were "in dark, bold font, making them stand out from both the white screen and the surrounding gray text").

The Court finds that Plaintiff was reasonably notified about the Terms and the arbitration agreement contained therein. Here, like in *Walker*, the landing page to register for the OpenSea mobile app required that users like Plaintiff click a "Continue" button to proceed with registration. *Walker*, 2020 WL 703268, at *3. Above the "Continue" button was a statement that notified Plaintiff that when he clicked the button, he agreed to OpenSea's Terms. The words "Terms of Service" on the app were in bold white font and hyperlinked to the June Terms. Plaintiff does not dispute that he registered his OpenSea usernames using the mobile app. *See* Doc. #20.

Even if the Court accepts as true that Plaintiff did not see the clickable link and did not review the June Terms when accessing the app, Plaintiff was also reasonably notified of the Terms'

6

existence when he purchased the NFTs on the OpenSea website. To complete his purchase, Plaintiff had to check the box affirming that he agreed to the Terms. Next to the check box, it states, "By checking this box, I agree to OpenSea's Terms of Service." Once again, "Terms of Service" is in bold blue font, indicating that it is a hyperlink. Doc. #17 at 6. Plaintiff does not dispute that he purchased NFTs—that is the basis of this lawsuit. Thus, he must have checked the box agreeing to the Terms. Based on these circumstances, a "reasonably prudent smartphone user" like Plaintiff would know that by clicking "Continue" on the mobile app or checking the box affirming that he agrees, he is assenting to be bound by the provisions of the Terms of Service, including the arbitration agreement contained therein. *Phillips*, 2019 WL 4861435, at *5. Accordingly, the Court finds that a valid arbitration agreement exists between the parties.

    b.   **Determining the Arbitrability of the Case**

Next, Defendant argues that the Terms clearly include delegation clauses by (1) giving the arbitrator exclusive authority to determine the scope and enforceability of the arbitration agreement, and (2) adopting the JAMS Rules. Doc. #17 at 15. Plaintiff concedes that even if the arbitration agreement is valid, the limited exception within it that allows users to seek equitable relief in court for infringement or misuse of intellectual property rights applies to this case. Doc. #20 at 10.

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself. However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Arnold*, 890 F.3d at 551–52. Generally, a provision expressly adopting an arbitral forum's rules constitutes clear and unmistakable evidence that the parties have agreed to arbitrate arbitrability. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,

687 F.3d 671, 675 (5th Cir. 2012) ("[E]xpress adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Cooper v. WestEnd Cap. Mgmt., LLC*, 832 F.3d 534, 546 (5th Cir. 2016) (finding that the arbitrator did not exceed its powers by determining issues of arbitrability because the parties' agreement expressly adopted the JAMS Rules).

As a preliminary matter, the Court finds that the exception in the arbitration agreement that allows users to seek equitable relief in court does not apply. Although Plaintiff seeks injunctive relief, he asks the Court to require Defendant to "pause and/or stop any listing or sale of the Bored Ape [NFT] in question." Doc. #1 at 6. In his Complaint, Plaintiff never asserts that he has any intellectual property rights arising from his purchase of the Bored Ape NFT, nor does he claim that his rights have been infringed or misused to trigger the exception in the June Terms. *See* Doc. #1. Instead, Plaintiff argues for the first time in his Response that his intellectual property rights were infringed. Doc. #20 at 11. Therefore, Plaintiff's argument is not properly before the Court.

The June Terms clearly state that arbitrators will have exclusive authority to determine the scope and enforceability of the arbitration agreement and any disputes arising therefrom. Doc. #17, Ex. 5 at 15. The Terms also explicitly adopt the most current versions of the JAMS Rules to govern arbitrations. Doc. #17, Ex. 5 at 14. Rule 11(b) of JAMS Comprehensive Arbitration Rules and Procedures states:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*JAMS Comprehensive Arbitration Rules & Procedures*, JAMS, https://web.archive.org/web/20211201012701/https:/www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11 (June 1, 2021).

Accordingly, the Court finds that the June Terms' "express adoption" of the JAMS Rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Miller v. ConocoPhillips Co.*, No. 4:20-cv-1634, 2021 WL 4027054, at *2 (S.D. Tex. Mar. 4, 2021) (citing *Petrofac, Inc.*, 687 F.3d at 675). Thus, finding valid delegation clauses, the Court finds that all claims before it must be submitted to arbitration. Accordingly, Defendant's Motion to Compel should be granted.

### c. Plaintiff's Request for Pre-Arbitration Discovery

Plaintiff asks that if the Court grants the Motion to Compel Arbitration that the Court should allow him to "conduct limited discovery on the issues central to arbitrability," namely the visibility and accessibility of the Terms. Doc. #20 at 12. It is unclear to the Court how the discovery Plaintiff seeks are relevant to his negligence and breach of fiduciary duty, trust, contract, and implied contract claims. Therefore, the Court finds that these issues are better suited for the arbitrator to decide, and Plaintiff's request for pre-arbitration discovery is denied. *Bell v. Koch Foods of Miss., LLC*, 358 Fed. App'x 498, 500–01 (5th Cir. 2009) (affirming the district court's denial of a request for arbitration-related discovery).

### IV. Conclusion

Accordingly, because there is a valid and enforceable arbitration agreement, and because no successful defense has been raised by Plaintiff, Defendant's Motion to Compel Arbitration (Doc. #17) is GRANTED. And, according to the Fifth Circuit's holding in *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992), the case is hereby DISMISSED WITH PREJUDICE.

It is so ORDERED.

__MAR 2 2 2023__
Date

_____
The Honorable Alfred H. Bennett
United States District Judge